UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 05-11985 WWB |
| ROBERT E ENNIS | : | Chapter 13 |
| KATHLEEN ENNIS | : | Document #_____ |
| Debtor(s) | : | |
| Ronda J. Winnecour, Trustee | : | |
| Movant | : | |
| vs. | : | |
| Countrywide Home Loans Inc./fka | : | |
| Countrywide Funding Corp. | : | |
| Respondent(s) | : | |

### TRUSTEE'S MOTION TO COMPEL COUNTRYWIDE HOME LOANS INC./fka COUNTRYWIDE FUNDING CORP. TO PROVIDE LOAN HISTORIES AND FOR SANCTIONS

And comes now, Ronda J. Winnecour, Chapter 13 Standing Trustee for the Western District of Pennsylvania who respectfully represents the following:

1. Movant, Ronda J. Winnecour (hereinafter sometimes referred to as the "Trustee") is the duly appointed Trustee in the above-captioned Chapter 13 Bankruptcy case.

2. Respondent, Countrywide Home Loans Inc/fka Countrywide Funding Corp. (hereinafter sometimes referred to as Countrywide) is a corporation, listing as its principal place of business 4500 Granada, Calabassas, CA 91302.

3. The Pennsylvania Department of State web-site reflects that Countrywide's authorized agent for service is c/o The Prentice-Hall Corporation System, NY. However, the Pennsylvania Department of State only acknowledges Prentice-Hall in Harrisburg, Pennsylvania as an approved corporate agent. No address is provided.

4. The Trustee is a "conduit" trustee paying both pre-petition and post-petition mortgage payments. Many of the post petition mortgage payments include escrow components for

    taxes and insurance.  The payments are distinguished in the vouchers that are included with the checks.

5. The Trustee issues large lump-sum checks to Countrywide and includes vouchers clarifying the application of the sums contained in the check. The vouchers distinguish whether the payment is to be applied to the pre-petition arrears claim or the post-petition monthly mortgage payment.

6. The Trustee maintains carbon copies of all checks issued from her office.  (Copies of the carbons of the replacement checks and copies of those checks actually cashed are attached as exhibit 1. Copies of the vouchers attendant to the checks are not attached as they would exceed the maximum length for exhibits).

7. In October of 2005, the Trustee issued a voucher check, check #460886, to Countrywide in the amount of $112,454.71.

8. At the end of December, 2005, the Trustee spoke with a representative of Countrywide concerning this check.  Following that conversation, Countrywide wrote to the Trustee requesting its replacement. (A copy of the letter is attached as exhibit 2).

9. On January 4, 2006, the Trustee replaced the $112,454.71 check for the creditor with check #468895 in the amount of $112,454.71.   Subsequently, Countrywide again requested that the check be replaced.

10. On or about October 19, 2006 the Trustee replaced the check #468895 with check #503906 in the amount of $112,454.71.

11. On or about October 19, 2006, the Trustee replaced #464389 for $57,856.19 with check #503905 also in the amount of $57,856.19.

12. On or about October 19, 2006, the Trustee replaced check #468157 with check #503904 in the amount of $73,378.19.

13. On or about October 19, 2006, the Trustee replaced check #471769 with check #50392 in the amount of $16, 174.28.

14. Checks #503906, #503905, #503904 and #50392 were actually prepared for the Trustee's signature on September 29, 2006. However, they were not signed and sent to Countrywide until October 19, 2006.

15. On or about April 20, 2007, the Trustee replaced check #514935, issued November, 2006 with check #527875 for $60,936.09.

16. On or about April 20, 2007, the Trustee replaced check #510901, issued December, 2006 with check #527874 in the amount of $82,048.48.

17. The Trustee believes and avers that all of the original checks were properly disbursed to Countrywide to the appropriate addresses, in the appropriate amounts.

18. The Trustee believes and avers that all of the original checks were received by Countrywide.

19. The Trustee believes and avers that the checks were lost, destroyed or misplaced by Countrywide.

20. The Trustee believes and avers that Countrywide did not timely post the funds to the debtor(s)' accounts.

21. The amounts of the checks replaced for Countrywide between October 2005 and April 2007 total: $515,302.65.

22. The checks affect approximately 300 chapter 13 cases in the Western District of Pennsylvania.

23. Prior to the instant matters, Countrywide had an extensive history of losing both checks and their attendant vouchers.

24. Prior to the instant matters, the Trustee repeatedly expressed concerns regarding the debtor(s)' loan histories. She was assured that Countrywide would protect the loans, appropriately applying payments and making timely escrow payments. She was repeatedly assured that Countrywide would not charge the debtor(s) late fees, penalties or attorneys' fees as a result of their failure to timely post the chapter 13 plan payments.

25. When Countrywide, through its counsel, requested the replacement of check #0468895 in the amount of $112,454.71 for the second time, the Trustee wrote to counsel for the creditor and informed her that she would not release the check without Countrywide's providing a complete loan history for each case.

26. Subsequently, the Trustee became involved in an extensive email exchange with counsel for Countrywide. Ultimately, counsel for Countrywide agreed that Countrywide would provide complete loan histories for all of the affected accounts within 60 days. (Copies of the emails are attached as exhibit 3* ).

27. Despite its promise to provide the loan histories within 60 days of replacement, Countrywide has never provided the loan histories.

28. Despite the October, 2006 replacements, Countrywide continued to demonstrate fiscal irresponsibility by failing to timely cash check #514935 issued in November 2006 and check #510901 issued in December of 2006. The Trustee replaced both checks in April of 2007.

---

* The Trustee erred in her email of September 29, 2006 at 2:42 PM to Mr. McKeever. The Trustee writes: "…Your client has managed to lose checks in the amount of $16,174.28, $57,856.19, $73,373.19 and twice $112, 454 (which replaced two other checks-..." The original check #460886 apparently was not, in itself, a replacement check.

29. The debtor(s) are most likely not aware of Countrywide's failure to post the Trustee payments in a timely fashion. The Trustee is without knowledge as to whether or not Countrywide has made timely escrow payments on behalf of the debtor(s).

30. The Trustee is also concerned that Countrywide has attached impermissible charges, including late fees and attorneys' fees for its unconscionable delay in failing to timely cash and post the Trustee's check, against those debtor(s) who are no longer in bankruptcy. Both the Trustee and debtor(s)' counsel will be compelled to carefully review each and every case to determine the appropriate application of funds.

31. Countrywide's disdain for appropriate financial internal controls, mismanagement of funds disbursed and its failure to provide the promised loan histories support a probable conclusion that Countrywide is equally irresponsible concerning the timing and accuracy of escrow payments.

32. To date, the Trustee has not pursued additional legal action against Countrywide because she relied on its representations concerning the accuracy of the loan histories and its assurances that it would provide them.

33. Countrywide's failure to promptly cash and apply the Trustee's payments and Countrywide's failure to provide the loan histories as promised has caused the Trustee to incur significant costs.

34. Because the Trustee's office is wholly funded by debtor funds, the costs attendant to Countrywide's misconduct are being borne by those who can least afford them. Unfortunately, the debtors are also those who are most affected by Countrywide's mismanagement.

35. Additionally, the Trustee, debtors and their counsel are continuing to incur damages as this matter progresses.

36. The Trustee sought to avoid costly and time-consuming litigation by relying on the representations made by Countrywide that the funds were timely and appropriately applied and its promise that it would provide the loan histories.

37. Countrywide has not proceeded in good faith.

38. The integrity of the bankruptcy process is threatened when a single creditor dishonors its obligation to provide a truthful and accurate account of the funds it has received. The process is also diminished when a creditor consistently fails to promptly and accurately apply those funds in order to minimize concern, confusion, litigation and costs.

39. The integrity of the bankruptcy process is threatened further when a single creditor reneges on its promise concerning the reporting of such accounts.

WHEREFORE, the Trustee requests relief from this Honorable Court as follows:

A. That the Court order Countrywide Home Loans, Inc./fka Countrywide Funding Corporation to provide the Trustee, debtor(s) and debtor(s)' counsel with loan histories from the beginning of time within 10 days of this order.

B. That the Court order Countrywide Home Loans, Inc./fka Countrywide Funding Corporation to provide the Trustee, debtor(s) and debtor(s)' counsel with documentation demonstrating that sufficient and appropriate internal controls have been implemented to preclude additional posting delays.

C. That the Court order Countrywide Home Loans, Inc./fka Countrywide Funding Corporation to establish a national single payment address within the United States for all bankruptcy payments.

D. That the Court order Countrywide Home Loans, Inc./fka Countrywide Funding Corporation to remove any late fees, suspense payments, incidental charges and any negative information from the debtor(s)' loan history resulting from Countrywide Funding's failure to timely apply these and all other Trustee distributions.

E. That the Court issue an order which precludes Countrywide Home Loans Inc./fka Countrywide Funding Corporation from assessing legal fees for any action undertaken to attempt to recover the lost funds or in the defense of this action.

F. That the Court order Countrywide to provide proof certain, including cancelled checks and receipts, that all applicable escrow payments were timely made.

G. That the Court order Countrywide Home Loans Inc./fka Countrywide Funding Corporation to pay the sum of $2,000 to Ronda J. Winnecour, Chapter 13 Standing Trustee for the Western District of Pennsylvania as a sanction for its conduct as described in the motion.

H. That the Court order Countrywide Home Loans Inc./fka Countrywide Funding Corporation to pay the sum of $1,000.00 to counsel of record for the debtor(s) in the above-captioned Chapter 13 bankruptcy case, as a sanction for its conduct as described in the motion;

I. Such further relief as this Honorable Court may deem just and appropriate.

10/9/2007                     /s/ Ronda J. Winnecour
                              Ronda J. Winnecour
                              Chapter 13 Trustee (PA I.D.#30399)
                              U.S. Steel Tower – Suite 3250
                              (412) 471-5566